**In re the Marriage of Jennifer HOVEY, Appellant–Petitioner,**

**v.**

**Jimmy HOVEY, Appellee–Respondent.**

**No. 45A05–0807–CV–444.**

Court of Appeals of Indiana.

March 19, 2009.

Rehearing Denied May 15, 2009.

Thomas K. Hoffman, Crown Point, IN, Attorney for Appellant.

Geoffrey Slaughter, Taft, Stettinius & Hollister LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Jennifer Hovey (Mother), appeals the trial court's Order On Proceedings Of April 30, 2008 with respect to Appellee–Respondent's, Jimmy Hovey (Father), child support arrearage.

We reverse, vacate, and remand for further proceedings.

### ISSUE

Mother raises three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court properly amended Father's child support arrearage when no pleading was filed, no notice to Mother was given, and no evidentiary hearing was held.

### FACTS AND PROCEDURAL HISTORY

On March 9, 2004, the trial court approved an Agreed Order which found Father to be in arrearage on his child support payments in the amount of $15,188.30, in addition to unpaid legal fees to Mother's attorney in the principal sum of $3,080.00. The trial court reduced the arrearage and unpaid legal fees to judgments in favor of Mother and her counsel against Father.

On May 31, 2005, Mother's attorney filed a Verified Motion to Enforce Judgment by Proceedings Supplemental seeking collection of his fees. On July 15, 2005, the trial court held a hearing on counsel's motion and instructed him to submit a proposed

garnishment order. During the hearing, Father raised the issue of child support arrearage, indicating that mistakes had been made in the calculation. Initially, the trial court reminded Father that the instant proceedings exclusively addressed Mother's counsel's request for a garnishment order for unpaid legal fees. The trial court advised Father that "[i]n order for the [c]ourt to look at something, there has to be the proper pleadings filed." (Transcript p. 2). Nevertheless, Father persisted in raising the child support arrearage issue:

> I understand that the money is owed to [Mother's counsel] and I'm not saying that he shouldn't be paid. Of course, he should be paid, but apparently I can't bring up the mistakes that have been made and have been made since 1996
>
> . . .
>
> . . .
>
> His attorney fees, the support, the interest, the accrued interest, the way it's calculated. Everything is wrong. And I don't understand.
>
> . . .
>
> And I can show back to '96 he's made mistakes.

(Tr. pp. 2, 3 and 4). At the end of the hearing, the trial court revisited the issue raised by Father and told him:

> The second one is your issue regarding child support. I'm going to give you an opportunity to submit all your paperwork that you have showing from the date of June 6, 1997. Any paperwork that you have and we'll have our—we will check it out and see what the figures of the back child support should be. And then we'll have a hearing. But you have to submit that. I'll give you twenty (20) days to submit everything you want the [c]ourt to look at. Everything.
>
> . . .

> But that's what it's going to be. And then I will set a hearing after we finish all that. We'll set a hearing. And we'll coordinate it with [Mother's counsel's] schedule if he wants to be here. Then we'll schedule with you here.

(Tr. pp. 13 and 17).

On July 29, 2005, the trial court received Father's documentation of child support payments. On March 8, 2006, without the filing of any pleadings or evidentiary hearing, the trial court issued an Order effectively reducing Father's child support arrearage from $15,188.30 to $8,662.69. The trial court also stated

> The [c]ourt now orders that a status hearing be held to determine who has custody of this child, who has jurisdiction of this case and what if any arrearage is due and to whom. The [c]ourt will also hear arguments as to the arrearage.

(Appellant's App. p. 36).

On June 9, 2006, the trial court participated in a telephonic conference with the Nevada trial court concerning jurisdiction over post-dissolution custody issues that had been raised by the parties in the Nevada trial court. During the conference, Mother, Father and their respective Nevada counsel were present. Due to a mechanical malfunction, not all of the telephonic conference could be transcribed; however, a docket entry was made showing a "status conference" set for July 24, 2006. (Appellant's App. p. 26). The record is devoid of any evidence that notice was sent to the parties informing them of the scheduled status hearing.

At the July 24, 2006 status hearing only Father appeared. Because Mother failed to appear, the trial court proceeded in her absence. During the hearing, the trial court asked Father about its Order of March 8, 2006. Father stated:

That order is correct and the way you wrote it is correct, which states that through the [c]ourt the child support I paid was this amount and I owe this amount and that was exactly what I was saying.

. . .

So, that's why I was waiting to come in front of you so I can show you the receipts to help bring that eight thousand (8,000) down to zero that I had been saying all along it was. I knew it was zero. I knew I didn't owe anyone anything.

(Tr. pp. 37, 38). The court proceeded by informing Father "[the clerk] is marking all the exhibits that you sent me [on July 29, 2005]. Only it wasn't entered into evidence. I'll tell you what we submitted today." (Tr. p. 44). In conclusion, the trial court ordered as follows:

I'm going to deal with this right now. . . . The [c]ourt is reviewing the documents sent by [Father] regarding his child support. The [c]ourt had determined, based solely on the child support calculations, the child support history provided to the [c]ourt by [Father], that it was about eight thousand (8,000). [Father] is here now indicating to the [c]ourt that he does not owe any money.

The [c]ourt has made all kind of documents regarding [Father's] Exhibit A, proof of NIPSCO, the Harley Davidson, the check, the tax intercepts, but I think the most important copy we have would be—and these are Respondent's A, B, C, D, E, and F. The most important document that I have before me is [Father's] Exhibit F indicating that on May 31, 2005, based upon information that you provided us from the custodial person on this case, the case is closed. So she signed a notarized affidavit stating that there are no arrearages due.

The [c]ourt will take this and find that there is no arrearage due and owing to her. And I will do an order this week because I'm not taking anything under advisement. That there is no support due and owing. So, they will have to come and show me.

So, keep all your papers. And we'll go on from here. Sir, I am very sorry that we took so long.

(Tr. pp. 44–45). The trial court's ruling was reduced to a written order, dated July 24, 2006.

On August 10, 2006, the trial court conducted another status hearing. In open court, Mother filed four pleadings: (1) motion to accept filing and jurisdiction of motion for change of custody; (2) motion for hearing before presiding judge or, in the alternative, motion for change of venue; (3) motion to strike court order dated March 8, 2006; and (4) motion to strike court order of July 24, 2006. The trial court denied Mother's venue challenge and deferred ruling on her motions to strike until April 30, 2008.

During the hearing on April 30, 2008, the trial court heard argument with regard to Mother's motions to strike the trial court's Orders of March 8, 2006 and July 24, 2006. On June 26, 2008, the trial court issued its Order On Proceedings Of April 30, 2008, in which the trial court concluded, in pertinent part:

2. That [Mother's] Motion to Strike Court Order dated March 8, 2006 and Motion to Strike Court Order of July 24, 2006, should each be denied, premised upon the following:

a. That [Mother], by and through her counsel, [ ] was put on notice at the July 15, 2005 hearing for proceedings supplemental that [Father] had raised the issue of child support arrearages;

b. That although placed on notice, [Mother], by and though her counsel, [ ], took no action to object to evidence submitted by [Father] regarding the issue of child support arrearages; filed no Trial Rule 60 motion; filed no Trial Rule 59 Motion to Correct Errors; and initiated no appeal from the March 8, 2006 and July 24, 2006 Orders of the [c]ourt; and

c. That it would not now be equitable for the parties to re-litigate the issues of child support arrearages or for the [c]ourt to "second guess" the determinations made by the Magistrate because [Mother's] counsel had been put on notice.

(Appellant's App. p. 3).

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Mother asserts that the trial court erred by refusing to strike its two previous Orders of March 8, 2006 and July 24, 2006 respectively. Specifically, Mother contends that although Father raised the issue in open court, Father did not file pleadings seeking any post-judgment relief of his child support arrearage, and therefore, there were no issues pending before the trial court. Notwithstanding the lack of pleadings, the trial court then addressed the issue in its two Orders and reduced Father's child support arrearage to zero without sending notice to the parties or conducting an evidentiary hearing. Therefore, Mother maintains that because of the trial court's multiple failures to comply with the Indiana Trial Rules, the trial court was without jurisdiction to address Father's child support arrearage and its two Orders should be vacated. On the other hand, Father claims that the trial court did have jurisdiction under Ind. Trial Rule 60(B)(7) to consider and grant Father's request for relief from his child support arrearage on the basis that the arrearage had been satisfied.

■ While we agree with Father that his request for relief during the proceedings supplemental hearing amounted to a motion for relief from judgment pursuant to T.R. 60(B), we find that the motion is better characterized as grounded on T.R. 60(B)(1), "mistake." The transcript of the hearing is rife with Father's statements that a mistake was made in the calculation of his child support arrearage. Specifically, Father commenced his argument by stating that "apparently I can't bring up the mistakes that have been made and have been made since 1996 . . . ." (Tr. p. 2). He insisted that "everything [was] wrong" and that he had evidence that since 1996, "mistakes" had been made in the calculations. (Tr. pp. 3 and 4). At no point does Father insist that he has satisfied all or part of the arrearage; rather, the only claim he asserts is that the back support is wrongly calculated.

■ A motion under T.R. 60(B) is addressed to the equitable discretion of the trial court and we will reverse a trial court's ruling only for an abuse of discretion. *Lankenau v. Lankenau,* 174 Ind. App. 45, 365 N.E.2d 1241, 1243 (1977). A motion for relief from judgment because of mistake must be made within one year after the trial court entered its order. *See* T.R. 60(B)(1). Here, the trial court entered the disputed Order on March 9, 2004; whereas Father moved the trial court on July 15, 2005, well outside the one year time period. However, because a T.R. 60(B) motion is based in equity and because some of the conventional temporal limitations applicable to most actions will not apply to child support rights, we will accept that Father's action was timely raised. *See, e.g., Williamson v. Williamson,* 825 N.E.2d 33, 48 (Ind.Ct.App.2005)

(because parents cannot contract away the child support benefits, some of the conventional limitations to actions are not applicable).

■ Nevertheless, although time limitations might be more lenient, some trial rules do need to be followed. Most notably, when a T.R. 60(B) motion is made, notice to opposing parties and a hearing are required. Our supreme court has stated:

> [W]e think it is clear that [T.R.] 60(B) does not authorize a trial judge to set aside a judgment absent a motion by a party. Further, if a motion under [T.R.] 60(B) is made by a party; notice to the opposing party and a hearing thereon is required before an order may be issued.

*State ex rel. Aafco H. & A.C. Co., v. Lake Superior Ct.,* 263 Ind. 233, 328 N.E.2d 733, 734 (Ind.1975).

Despite the trial court's assurance at the proceedings supplemental hearing that an evidentiary hearing would be held on Father's T.R. 60(B) motion, no such hearing was ever held. Furthermore, even if it can be argued, as Father does, that the hearing of July 24, 2006 should be considered to be the evidentiary hearing, Mother did not receive notice of the scheduled hearing. Father claims that during the telephonic conference with the Nevada trial court, at which Father, Mother, and their respective Nevada counsel were present, the trial court indicated that it would hold a hearing to determine the amount of child support arrearage.[1] However, the chronological case history merely indicates that a "status hearing" was set for July 24, 2006, and the record is completely devoid of any evidence that the clerk notified

Mother's Indiana counsel in writing of the hearing.

To make matters worse, in entering its Order of March 8, 2006, the trial court also failed to follow the most elementary rules in admitting evidence. The record reflects that the trial court's Order of March 8, 2006 is based on evidence that was not admitted until the hearing of July 24, 2006. Specifically, the trial court stated on the record that "here's what we're going to do. [The clerk] is marking all the exhibits that you sent me. Only it wasn't entered into evidence." (Tr. p. 44).

In light of these procedural irregularities—the lack of notice, no evidentiary hearing, and admission of evidence after the Order is entered—Mother requests us to declare the trial court's Orders of March 8, 2006 and July 24, 2006 void and to strike them. As such, Mother implicitly invokes the void judgment provision of Indiana Trial Rule 60(B)(6).

■ The distinction between a void and voidable judgment is no mere semantic quibble. *Stidham v. Whelchel,* 698 N.E.2d 1152, 1154 (Ind.1998). "A void judgment is one that, from its inception, is a complete nullity and without legal effect. . . ." *Id.* By contrast, a voidable judgment "is not a nullity, and is capable of confirmation or ratification. Until superseded, reversed, or vacated it is binding, enforceable, and has all the ordinary tributes and consequences of a valid judgment." *Id.* A judgment is void if it is rendered without due process. *Id.* And due process requires notice of certain proceedings after the initiation of a lawsuit. *Moore v. Terre Haute First Nat.'l Bank,* 582 N.E.2d 474, 478 (Ind.Ct.App.1991), *reh'g denied.* Here, no notice was given of

---

1. We note that the trial court in its subsequent hearing on July 24, 2006 stated on the record that "on the telephone conference, we set at that date, this court date." (Tr. p. 35). Nevertheless, the trial court's belated action does not rectify the notice requirement.

the alleged evidentiary hearing. We have previously held that a judgment is without legal efficacy for want of due process if a party was not given notice. *Id.* at 478–79 (stating that T.R. 41(E) requires an adversarial hearing prior to dismissal necessitating notice and an opportunity to be heard). Therefore, we reverse the trial court's Order On Proceedings Of April 30, 2008, vacate the trial court's Orders of March 8, 2006 and July 24, 2006, and remand to the trial court with instructions to hold an evidentiary hearing on Father's claim that his child support arrearage was wrongly calculated.

### CONCLUSION

Based on the foregoing, we conclude that due to trial court's procedural irregularities, the trial court's Order of March 8, 2006 and July 24, 2006 are void and vacated. We remand to the trial court with instructions to conduct an evidentiary hearing on Father's child support arrearage.

We reverse, vacate, and remand with instructions.

DARDEN, J., and VAIDIK, J., concur.