# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 24 2019, 5:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Sophia J. Arshad
Vasilia M. Pangere
Merrillville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Marriage of: Kristina Sigman, | July 24, 2019 |
| *Appellant-Petitioner-Mother,* | Court of Appeals Case No. 19A-DR-56 |
| v. | Appeal from the Lake Circuit Court |
| Jeremy D. Sigman, | The Honorable Marissa McDermott, Judge |
| *Appellee-Respondent-Father.* | The Honorable Lisa A. Berdine, Magistrate |
| | Trial Court Cause No. 45C01-0611-DR-819 |

**Tavitas, Judge.**

# Case Summary

Kristina Sigman ("Mother") appeals the denial of her motion to set aside an agreed order, wherein the trial court amended Jeremy D. Sigman's ("Father") child support obligation and arrearage. We reverse and remand.

# Issue

Mother raises two issues on appeal, which we consolidate and restate as whether the trial court erred in denying Mother's motion to set aside an agreed order as void, where Mother did not receive notice of the petition for modification of child support, the underlying hearing, or the resulting agreed order.

# Facts

This case involves an Indiana child support order that was registered for enforcement in Ohio, pursuant to the Uniform Interstate Family Support Act ("UIFSA"). On November 2, 2006, Mother filed a petition in Lake County, Indiana, to dissolve her marriage to Father. During the pendency of the dissolution action, Mother moved to Ohio. On December 13, 2012, the Indiana trial court granted Mother's petition for dissolution; awarded custody of the parties' three children to Mother; and ordered Father to pay $163.00 in weekly child support.[1] In March 2013, the State—by Lake County deputy

---

[1] The parties' three children moved to Ohio to join Mother after the entry of the dissolution decree.

prosecutor Kristen Bruss of the child support division—filed an order to intervene and redirect payments, which was granted by the trial court on March 8, 2013. The trial court, thereby, ordered the Lake County clerk to forward Father's child support payments to Mother in Ohio.

[4] On August 18, 2014, the State filed a petition to modify child support and determine arrears ("Petition"), wherein the State alleged a "significant change in [Father's] circumstances t[hat] warrant[ed] a change in current child support"; asked for determination of Father's arrearage; and requested a hearing. App. Vol. II p. 46. The associated CCS entry includes a certificate of service that bears Bruss' initials and provides:

> I hereby certify that on the 15[th] day of August, 2014, service of a true and complete copy of the above and foregoing pleading or paper was made *upon each party or attorney of record* herein by depositing the same in the United States Mail in envelopes properly addressed to *each of them* . . . .

*Id*. at 45 (emphasis added). The distribution list on the Petition includes only Father and Bruss, with no mention of Mother. Also, the summons provides that "SERVICE BY SHERIFF" was made upon Father, with no reference to service upon Mother. *Id*. at 47.

[5] The trial court ultimately[2] conducted the initial status hearing on the Petition on November 18, 2014. Father and the State appeared at the status hearing. Mother was not present. That day, Father and the State tendered to the trial court an agreed order on modification of support and a determination of the arrearage ("Agreed Order"), which was granted on November 19, 2014.[3] The Agreed Order does not bear a distribution list and does not reflect that the Agreed Order was sent to Mother.

[6] Pursuant to the Agreed Order: (1) Father's arrearage was determined to be "$7,407.88 as of 11/18/2014"; (2) the parties' oldest child was found to have resided with Father for two years; (3) Father was ordered to continue to pay to Mother child support in the amount of $72.00 per week for the parties' two younger children; and (4) Mother was ordered to pay support of $175.00 per week to Father for the parties' oldest child. *Id*. at 22.

[7] In June 2016, Mother retained counsel to initiate enforcement proceedings against Father, who was behind on his child support payments. In reviewing the clerk's record and Father's child support payment history, counsel for Mother uncovered court records regarding the Petition, the hearing, and the Agreed Order modifying support. Counsel notified Mother and, on June 24,

---

[2] The initial status hearing, first set for September 16, 2014, was reset to November 18, 2014. The record includes a second "Certificate of Service" initialed by Bruss, which provides that service was made upon each party.

[3] We note that a different magistrate and judge entered the Agreed Order than entered the order on the motion to set aside the Agreed Order.

2016, Mother moved to set aside the Agreed Order pursuant to Indiana Trial Rule 60(B). Mother argued that she had not received notice of the Petition, the November 18, 2014 hearing, or the Agreed Order from either Indiana or Ohio officials. Mother's motion to set aside the Agreed Order further provided:

> 11. That in addition to Mother never having received Notice nor being a part of the "Agreed Order" the child support calculation is flawed in that the $120 per week for child care that Mother was spending which was found and, entered less than one year previous, as part of the Court's previous child support calculation, was not used in the Prosecutor's calculation.
>
> * * * * *
>
> 13. That although the Prosecutor does not contact the opposing parties in a UIFSA matters, Mother was never notified of the proceedings and certainly was not aware that SHE could have been obligated to pay support.
>
> * * * * *
>
> 15. That Mother was never given an opportunity to participate in a hearing or be part of the Agreed Order that was entered.

*Id*. at 60-61.

[8] On September 24, 2018, the trial court conducted a hearing on Mother's motion to set aside the Agreed Order. Under direct examination, counsel for Mother asked Mother, "Did you ever receive anything concerning th[e] petition that was filed? That agreement that was entered? Anything?" Tr. Vol. II p. 17.

Mother replied, "Never. Nothing." *Id*. Asked whether she was a party to the Agreed Order, Mother replied, "Absolutely not." *Id*. Counsel for Mother also asked, "[Y]our testimony today is you never received anything from either the State of Indiana or the State of Ohio regarding any petition, any court date, did you ever receive a copy of the court Order?" Mother responded, "No, if I would have, I would have object[ed]. [] I would've been at the court hearing to object. [ ] I would never have let that go through like that." *Id*. at 24.

[9]     Bruss testified that she is the deputy "in charge of UIFSA petitions," and that, in the course of UIFSA proceedings, the initiating jurisdiction forwards motions and court orders to the enforcing jurisdiction, which is tasked with providing notice to the out of state party. *Id*. at 41. Bruss testified further that, earlier in the UIFSA proceedings, she sent materials to Ohio officials, who forwarded the materials to Mother. Bruss testified that she "ha[d] no reason to believe that [provision of notice] didn't happen" regarding the Petition, the hearing, and the Agreed Order.[4] *Id*. at 44.

---

[4] Bruss testified that, in the course of reviewing the case for modification of support, she requested "financial records through mom's county in Ohio." Tr. Vol. II p. 42. She testified further, specifically, she "contacted [the Ohio officials'] office" and obtained a list of "the specific dates that they mailed out the request for the financial declaration" to Mother; Bruss then recited those dates to the trial court. *Id*. at 43. Bruss testified: "I do not have specific dates that [Ohio officials] sent the court paperwork to [Mother] because [the Ohio officials] said they just get it, they mail it, and that's it. They put it in their file . . . so, I don't have that date." *Id*. at 44.

[10]  On direct examination, Bruss testified as follows regarding her office's general practices regarding preparation of agreed orders in UIFSA matters:

> Q:    . . . [I]n an UIFSA case, is it unusual for the prosecutor and the, and one of the parents [ ] to enter into an agreement and sign off on it?
>
> A:    Not unusual at all; no.
>
> * * * * *
>
> A:    All of our cases are set for initial status conference, which is a meeting with me here in the court.  It is filed through the court.  It's on the case's docket.  They're checked in with the bailiff.  They meet with me, or whatever prosecutor is handling the case.  They, if we can come to an agreement at that setting, then we're done and I, the Order will be typed up.  Everyone will sign it.  We will not need court time.
>
> * * * * *
>
> Q:    And you talk to the dad or the mom?
>
> A:    Uh-huh.
>
> Q:    An agreement is reached and you come in here and report it to Magistrate Berdine?
>
> A:    We don't report it; we type it and sign it.
>
> Q:    Just type and sign it?

A:      File it.

Q:      The other parent doesn't sign it?

A:      No.  No on any UIFSA case we don't require the signature of the other parent; they need not appear at these proceedings. They're not required to appear.  And that's the case when, that's the purpose of UIFSA.  The purpose is to, is for the convenience of mom not having to travel here, dad not going to Ohio.  I have cases all over the world.  And if we had to wait for an agreement on, I mean, especially a modification, it would never happen.

Q:      Okay.

A:      So that's kind of what you sign up for when you, when you work with the IV-D office and these UIFSA cases.

Q:      So then now the UIFSA agreed order is entered [ ] does that get sent to Ohio also?

A:      Absolutely.  And multiple copies.  . . .[W]hen the petition goes out it goes to the State of Ohio and goes to dad.  That's just it's, it's just not even filed yet.  We get the file-stamped copy back, those go out to State of Ohio and to dad.  The agreed Order goes out just when we filed it, it's not signed yet, it goes to the State of Ohio, it goes to dad.  It comes back from the judge.  It goes to the State of Ohio, it goes to dad.  So, multiple copies are sent to both places at every step.

Tr. Vol. II pp. 46-47.

[11]     Under cross examination of Bruss, the following colloquy ensued:

Q:    Multiple copies [of court filings] are sent but never to mother?

A:    Not to mother [ ] that, that's the way UIFSA is set up; nothing goes to her directly.  It all goes to her county.

* * * * *

Q:    - - when mom wasn't there, an agreed Order was entered between your office and dad - - [ ] - - that would now obligate her to pay child support?

* * * * *

Q There's no input that's needed from her at all?

A:    That happens, yes.

Q:    Okay.  And you don't know what address the State of Ohio - - [ ] - - sent it to?

A:    No.

Q:    Okay.  And the State of Indiana made absolutely no contact with mother?

A:    No.

Q:    Correct?

A:    You're, you're not supposed to.

*Id*. at 48. Bruss testified further as follows:

> In this situation, I'll just explain; has happened, in, in many,
> many cases, and if a party gets a copy of the Order and isn't
> happy, you know, wants a new review, we always entertain that.
> And out-of-state parties are always welcome to, want to attend
> all hearings, to appear telephonically by request as well. So, it,
> you know, I don't want anyone to think that it's, oh, you know,
> we only talk to one party and that's the only person that's
> allowed and I, I don't know what happened here with Ohio, but I
> do know that we're not allowed to send anything to mom and we
> did do everything that we could to send it to the proper channels.
>
> Q:    But in order to participate either in person or by phone - -
> [ ]- - or request a modification or a review - - [ ]- - you have to
> have notice?
>
> A:    Yes.
>
> Q:    That anything was going on in the first place, correct?
>
> A:    That's correct.

*Id*. at 52-53. On re-direct examination, Bruss testified as follows regarding her

basis for believing that Ohio officials provided notice to Mother:

> Q:    But all the indications from all the records from both
> Indiana and Ohio are that [Mother] was notified multiple times?
>
> A:    I, I believe so, um, in that they would have reported [that
> Mother's mail was returned], particularly when we, we just
> called them this week just for, you know, some dates. I mean,
> this was four years ago, I mean, so. [ ] [T]hey, looking through

their files, looking through their data base [sic] nothing appeared to have ever been returned, and no money had ever been returned either, so I do have to believe that whatever data base [sic] they use had accurate records from it.

*Id.* at 53. Lastly, Bruss testified that: (1) "[a]ll the court process was followed [in Indiana] in notifying Ohio of everything that was going on"; (2) she did not know what address Ohio officials used for Mother; (3) Ohio officials produced no records of their efforts to notify Mother; (4) Ohio officials did not notify Bruss that Mother's mail was being returned, as is the typical protocol, which would have alerted Bruss to a failure of notice; (5) Bruss cannot refute Mother's claim that Mother did not receive notice of the Petition, the hearing, and the Agreed Order; and (6) Bruss "do[es]n't know what happened here with Ohio." Tr. Vol. II p. 52.

[12] At the close of the hearing, the trial court stated, "[B]ased on the evidence, testimony provided here by the witnesses[,] Mother has not met her burden to set aside this Agreed Order." *Id.* at 54. On October 25, 2018, the trial court entered a written order, in which the court stated: "Mother did not meet her burden of proof and Mother's Trial Rule 60[(B)] Motion for Relief from Judgment should be and hereby is DENIED." App. Vol. II p. 126. Mother now appeals.

# Analysis

[13] Mother argues that the Agreed Order is void for defective service of process, pursuant to Indiana Trial Rule 60(B)(6).[5] A motion under Indiana Trial Rule 60(B) is addressed to the equitable discretion of the trial court. *Hovey v. Hovey*, 902 N.E.2d 896, 900 (Ind. Ct. App. 2009). Although we typically employ an abuse of discretion standard in reviewing a trial court's ruling on a motion to set aside a judgment, when a motion for relief from judgment is made pursuant to Trial Rule 60(B)(6), alleging that the judgment is void, discretion on the part of the trial court is not employed because either the judgment is void or it is valid. *In Re Adoption of L.T.,* 9 N.E.3d 172, 175 (Ind. Ct. App. 2014). An order is void where the trial court lacks the authority to act. *Id.*

[14] We initially note that Father did not submit an appellee's brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *In re Marriage of Duckworth*, 989 N.E.2d 352, 353 (Ind. Ct. App. 2013). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error, which is "error at first sight, on first appearance, or on the face of it." *Id.* (emphasis omitted).

[15] UIFSA provides a uniform procedure to enforce in one jurisdiction support obligations that arise in another jurisdiction, without requiring the obligee to

---

[5] Mother also argues that the Agreed Order should be set aside, pursuant to Trial Rule 60(B)(1), due to mistake, surprise, or excusable neglect; however, we do not reach this claim, as Mother's Rule 60(B)(6) claim is dispositive.

maintain a new action or travel to the foreign jurisdiction. 14 IND. PRAC., *Family Law*, § 9:64 (2018). UIFSA is not intended to create new duties of support or to provide another forum for relitigating divorce issues, but rather it is intended to ensure that persons who owe a duty of support will provide it. *Id*. Accordingly, UIFSA actions may reach only issues related to support. *Id*.

[16] UIFSA proceedings conducted in Indiana are to be conducted in the same manner as other actions for enforcement of support. *Id*. at § 9:73. "One issue which may have to be determined in an UIFSA action is whether a party received notice of a hearing on a support issue." *Id*. at § 9:71. Service of process must be obtained in accordance to the Indiana Trial Rules. Indiana Code Section 31-18.5-2-10 provides that, in UIFSA actions, notice of service must be accomplished in compliance with the procedural and substantive law of Indiana.

[17] Indiana Trial Rule 5, which governs service and filing of pleadings and other papers, provides as follows:

> (A) Service: When Required. Unless otherwise provided by these rules or an order of the court, each party and special judge, if any, shall be served with:
>
> > (1) every order required by its terms to be served;
> >
> > (2) every pleading subsequent to the original complaint;
> >
> > (3) every written motion except one which may be heard ex parte;

. . .

> > (6) every written notice, appearance, demand, offer of judgment, designation of record on appeal, or similar paper.

> No service need be made on parties in default for failure to appear, except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided by service of summons in Rule 4.

> (B) Service: How Made. Whenever a party is represented by an attorney of record, service shall be made upon such attorney unless service upon the party is ordered by the court. Service upon the attorney or party shall be made by delivering or mailing a copy of the papers to the last known address, or where service is by FAX or e-mail, by faxing or e-mailing a copy of the documents to the fax number or e-mail address set out in the appearance form or correction as required by Rule 3.1(E).

> > . . .

> > (2) *Service by Mail*. If service is made by mail, the papers shall be deposited in the United States mail addressed to the person on whom they are being served, with postage prepaid. Service shall be deemed complete upon mailing. Proof of service of all papers permitted to be mailed may be made by written acknowledgment of service, by affidavit of the person who mailed the papers, or by certificate of an attorney. . . .

> . . .

(C) Certificate of Service. An attorney or unrepresented party tendering a document to the Clerk for filing shall certify that service has been made, list the parties served, and specify the date and means of service. . . .

(H) Distribution of Orders

(1) Unless otherwise provided by statute or these rules, the clerk shall distribute signed orders to non-defaulting parties for whom an e-mail address has not been provided.

. . . .

[18] In her brief, Mother relies upon *Hovey*, 902 N.E.2d at 898, in support of her motion to set aside the Agreed Order. In *Hovey*, a panel of this Court considered "[w]hether the trial court properly amended [the father's] child support arrearage *when no pleading was filed, no notice to [the mother] was given, and no evidentiary hearing was held*." 902 N.E.2d at 897 (emphasis added). On appeal from the denial of the mother's motion to strike the trial court's orders, the mother argued that, because of the trial court's failure to comply with the Indiana Trial Rules, the trial court lacked jurisdiction to address Father's child support arrearage and the trial court's orders should be stricken as void. In reversing the judgment of the trial court, this Court noted that "[t]he record is devoid of any evidence that notice was sent to the parties informing them of the scheduled [ ] hearing," and, specifically, "the record is completely devoid of any

evidence that the clerk notified Mother's Indiana counsel in writing of the hearing."[6]  *Id*. at 898, 901.  As the panel reasoned:

> *A judgment is void if it is rendered without due process.  And due process requires notice of certain proceedings after the initiation of a lawsuit. Here, no notice was given of the alleged evidentiary hearing.  We have previously held that a judgment is without legal efficacy for want of due process if a party was not given notice.*  Therefore, we reverse the trial court's [various orders at issue] and remand to the trial court with instructions to hold an evidentiary hearing on Father's claim that his child support arrearage was wrongly calculated.

*Id*. at 901-02 (citations omitted) (emphasis added).  *Hovey* establishes that failure to provide notice to the out-of-state party constitutes a denial of fundamental due process.

[19]    The record here is replete with procedural errors that affect fundamental due process.[7]  "The essential requirements of due process . . . are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Aguilera v. City of East Chicago Fire Civil Service Com'n*, 768 N.E.2d 978, 987 (Ind. Ct. App. 2002); *see also Bankhead v. Walker*, 846 N.E.2d

---

[6] A portion of the proceedings involved a "telephonic conference with [a] Nevada trial court concerning jurisdiction over post-dissolution custody issues that had been raised by the parties in the Nevada trial court." *Hovey*, 902 N.E.2d at 898.  In that proceeding, both parents appeared and were represented by their respective Nevada counsel.

[7] For instance, the summons accompanying the State's petition to modify custody is captioned as a petition to establish paternity.

1048, 1053-54 (Ind. Ct. App. 2006). The State and the trial court disregarded basic requirements of notice and due process. UIFSA provides that, if the statute does not provide for procedures, Indiana's procedures apply. Indiana Trial Rule 5 requires proper notice and provides the procedures for notice, as well as the proof required for the trial court to find that a party has complied with notice provisions.

[20] Here, Bruss testified, regarding the State's failure to provide notice of the underlying hearing to Mother, as follows: in UIFSA matters, Indiana officials are "not supposed to" make contact with the out-of-state party, such that responsibility for providing notice to Mother rested with Ohio officials. Tr. Vol. II p. 48. The trial court did not ask Bruss to present supporting authority for the policy. If relying on notice given by Ohio officials, Bruss was responsible for providing the trial court with evidence that such notice was given.[8] The record here is devoid of evidence that the Petition and notice of hearing were issued or that the Agreed Order was distributed in compliance with Trial Rule 5.

[21] Not only is it evident from the record that Mother did not receive notice of the Petition, the hearing, or the Agreed Order from either Indiana or Ohio officials, but Bruss conceded that the State did not serve Mother with notice and just *presumed* that Ohio provided Mother with notice. Despite Bruss' assertions, the

---

[8] As noted above, Bruss testified that she basically assumed Ohio gave notice, but she could not tell the trial court when, or to what address, such notice was made.

record fails to indicate that the Petition, notice of the underlying hearing, or the Agreed Order were ever sent to Ohio officials.

[22] We fail to understand the numerous procedural errors; the trial court's justification for proceeding ex parte with a hearing to modify support; the trial court's apparent acceptance of Bruss' statement that Indiana was not responsible for providing notice to Mother; and Indiana officials' casual assumption that Ohio must have provided notice to Mother, despite lack of proof that Indiana ever sent the Petition, notice of the hearing, or the Agreed Order to Ohio, or proof that Ohio officials had forwarded. Moreover, in ruling, from the bench, the trial court never made a finding of notice to Mother and failed to explain its ruling that Mother failed to carry her burden to prove that the Agreed Order should be set aside pursuant to Indiana Trial Rule 60(B).

[23] In reviewing de novo the trial court's denial of Mother's motion to set aside the Agreed Order, we must conclude that the denial of fundamental due process to Mother renders the trial court's Agreed Order void pursuant to Rule 60(B)(6).[9]

---

[9] We are unclear as to which provision of Rule 60(B) the trial court was referring in ruling from the bench that Mother did not meet her burden. We assume that the trial court considered each provision of Rule 60(B) to determine whether Mother was entitled to relief; however, the court's analysis is absent from the transcript and from the order denying relief. When trial courts fail to identify on the record or in their orders the supporting rationale for the order, this Court must review all possible bases upon which the trial court may have ruled the way that the trial court did. This is a tedious process which can lead this Court to fail to recognize the trial court's actual reasoning underlying the trial court's order.

If the trial court found, but did not delineate, that Mother received notice pursuant to Trial Rule 5, Mother still was entitled to relief pursuant to Trial Rule 60(B)(8), which requires the filing of the motion to set aside within a reasonable time and must assert a meritorious claim or defense. Here, Mother's motion to set aside the Agreed Order states that the Agreed Order was "flawed" because the child support calculation failed to include Mother's longstanding child care expense, which was reflected on the parties' child support worksheet when the original child support determination was entered. App. Vol. II p. 60.

*See id.* ("[A] judgment is without legal efficacy for want of due process if a party was not given notice."); *see Hovey*, 902 N.E.2d at 898; *cf. Holmes*, 726 N.E.2d at 1283. Mother filed her motion to set aside the judgment within a month of her counsel's discovery of the underlying proceedings; we deem Mother's motion to have been filed within a reasonable time. *See Kirchgessner v. Kirchgessner*, 103 N.E.3d 676, 681 (Ind. Ct. App. 2018) (finding no abuse of discretion from the trial court's finding that appellees' Rule 60(B) motion for relief from judgment, filed twenty-five years after the underlying order, was filed "within a reasonable time" given the "specific circumstances of the case").

[24] Based on the foregoing, we reverse the trial court's denial of Mother's motion to set aside the Agreed Order pursuant to Trial Rule 60(B)(6) and remand for the trial court to vacate the Agreed Order and for proceedings consistent with this opinion regarding the parties' outstanding child support and arrearage issues.

# Conclusion

[25] The trial court erred in denying Mother's motion to set aside the Agreed Order as void due to defective notice. We remand to the trial court for further proceedings. We reverse and remand.

[26] Reversed and remanded.

Crone, J., and Bradford, J., concur.